bpIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD OLIVA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-06447 |
| | ) | |
| v. | ) | Judge Elaine E. Bucklo |
| | ) | |
| BLATT, HASENMILLER, LEIBSKER & MOORE, LLC, | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

NOW COMES defendant Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM"), by its

undersigned attorneys, and in support of its Motion for Summary Judgment, states as follows:

## INTRODUCTION

This case arises out of a debt collection lawsuit filed against Ronald Oliva ("Oliva") on

December 10, 2013 by Portfolio Recovery Associates, LLC ("PRA") in the Cook County Circuit

Court, *Portfolio Recovery Associates, LLC v. Ronald Oliva*, No. 13 M1 168468 (the "Collection

Case"). PRA was represented in the Collection Case by BHLM, and Oliva was represented by

the Sulaiman Law Group, Ltd., the same attorneys who represent him in the instant case. On July

10, 2014, the Collection Case was voluntarily dismissed without prejudice.

Thereafter, on August 20, 2014, Oliva filed this lawsuit alleging that BHLM violated the

venue provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692i(a)(2),

by filing the Collection Case at the Daley Center, in the First Municipal District of the Cook

County Circuit Court, rather than at the Bridgeview courthouse, located in the Fifth Municipal

District, where Oliva currently resides. (*See* 15 U.S.C. §1692i(a)(2), which requires that a debt

collection action must be brought in the "judicial district" in which the consumer resides or

where the consumer signed the contract.)  At the time BHLM filed the Collection Case in December 2013, however, it was following the FDCPA's venue requirements as construed and applied by *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), which held that for purposes of Section 1692i(a)(2), "judicial district" meant the Cook County Circuit Court as established by the Illinois Legislature and not the various municipal subdivisions established by the Circuit Court.  Thus, as long as the debtor resided within Cook County, it was proper to file in the First Municipal District, at the Daley Center.

On July 3, 2014, while the Collection Case was still pending, a divided *en banc* panel in *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014), overruled *Newsom* and held that "judicial district" meant instead the smallest existing geographical unit within the state court system (which, in the case of Cook County, means the municipal districts).  Because the *Suesz* court took the further step of applying its new rule retroactively, the result (among other things) is that BHLM is now being sued here for following the law, as it then stood, at the time it filed the underlying Collection Case.[1]

---

[1] This case is one of 28 lawsuits filed against BHLM since August 2014, by the same plaintiff's counsel, all alleging "retroactive" *Suesz* violations based on collection lawsuits filed in the Daley Center. *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-6447 (N.D. Ill.); *Conroy v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-6725 (N.D. Ill.); *Murry v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-7151 (N.D. Ill.); *Jelebinkov v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-7372 (N.D. Ill.); *Oberg v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-7369 (N.D. Ill.); *Henderson v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-7517 (N.D. Ill.); *Dyer v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-7486 (N.D. Ill.); *Padilla v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-7650 (N.D. Ill.); *Cerda v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-7813 (N.D. Ill.); *Bianco v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-7866 (N.D. Ill.); *Komisar v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-7948 (N.D. Ill.); *Komisar v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-7950 (N.D. Ill.); *Knight v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-8169 (N.D. Ill.); *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-8261 (N.D. Ill.); *Saunders v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-8311 (N.D. Ill.); *Desfassiaux v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-8663 (N.D. Ill.); *Grasse v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-8573 (N.D. Ill.); *Rowan v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, Case No. 14-cv-8923 (N.D. Ill.); *Hayward v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-9030 (N.D. Ill.); *Mako v.*

Such an inequitable result cannot be allowed. While Oliva will argue that BHLM cannot avail itself of the FDCPA's "bona fide error" defense, *see* 15 U.S.C. §1692k(c), the fact is that BHLM made no error when it filed the Collection Case at the Daley Center. To the contrary, BHLM was within the law, as it then and had stood for the last eighteen years, as expressed in *Newsom* (which had been affirmed by the original *Suesz* panel just two months prior). The only "error" BHLM made was in not divining that a divided *en banc* panel in *Suesz* would, eighteen years later, completely reverse course and overrule *Newsom*. That is, to be sure, the Court's prerogative, and BHLM has adjusted accordingly, both in terms of filing new cases in Cook County and seeking to transfer existing ones where necessary, but to hold BHLM retroactively liable for having followed established circuit precedent when it filed the Collection Case at issue here ignores fundamental fairness and due process.

*Suesz* aside and regardless of Oliva's place of residence, BHLM and PRA were still within their rights to file the Collection Case in the First Municipal District. As noted above, Section 1692i(a)(2) provides that a debt collection lawsuit must be brought in the judicial district "in which the consumer resides at the commencement of the action" or, alternatively, "in which the consumer signed the contract sued upon." 15 U.S.C. §1692i(a)(2)(A). Here, the "contract sued upon" was a past due MasterCard credit card originated by HSBC Bank and later acquired, after default, by Capital One and then PRA. During the time that Oliva incurred these charges,

---

*Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9600 (N.D. Ill.); *Ford v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9601 (N.D. Ill.); *Craig Summers v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case no. 14-cv-9602 (N.D. Ill.); *Carol Summers v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9603 (N.D. Ill.); *Campbell v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-10003 (N.D. Ill.)*; Craig Summers v. Midland Funding, LLC, et al.,* Case No. 14-cv-10174 (N.D. Ill.); *Stemberk v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 15-cv-2083 (N.D. Ill.); *Pickett v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 15-cv-2205 (N.D. Ill.); *Evans v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 15-cv-2318 (N.D. Ill.). There are probably 50-60 others that have been filed (by the same plaintiff's counsel) against other collection law firms and/or creditors. These cases are referred to colloquially as "*Suesz*" cases.

he lived *in Chicago* (which comprises the First Municipal District), using the card for clothing, food, entertainment, and other personal use.  Thus, the debt was incurred, and the "contract sued upon" was made, in Chicago, when Oliva made those purchases.  As such, there was no violation of Section 1692i(a)(2) when BHLM filed the Collection Case at the Daley Center.

## ARGUMENT AND LAW

If not for *Suesz*, this case would border on frivolous.  Indeed, this Court expressed skepticism about the claim from the very beginning. (Transcript of Proceedings – Scheduling Conference, October 30, 2014, attached here as Exhibit A.)  Oliva has no evidence to support his allegation that BHLM sued him "at a remote courthouse in order to discourage him from appearing and defending the Collection Case."  (Compl., para. 28.)  Indeed, the best he can muster is that it "can reasonably be inferred" this was BHLM's motivation.  (*Id*.)  The truth is that Oliva was not deterred at all from "appearing and defending" against the Collection Case.  To the contrary, he hired the Sulaiman Law Group and paid them a $1700 retainer to defend him on an $8205.20 debt that he does not dispute.  (Deposition of Ronald Oliva, March 25, 2015, hereinafter "Oliva Dep.", 20:13-21-22; 15:3-18:3; 34:14-24; 56:9-70:4.)  The fact that the Collection Case was filed in the First Municipal District (Daley Center) as opposed to the Fifth Municipal District (Bridgeview) was irrelevant to him; he testified that "I would say that it only matters to me because it matters to my lawyer." (Oliva Dep., 48:2-49:8.)  Cleary, however, it did *not* matter to his lawyers, at least for purposes of the Collection Case, because they never objected to or sought to transfer venue. (Declaration of Kenneth R. Wake, hereinafter "Wake Dec.", para. 18.)

Indeed, Oliva admitted that he didn't even understand the venue issue until the morning of his deposition.  (Oliva Dep., 35:7-36:4.)   Which is not surprising, because he had never seen

his FDCPA complaint before the deposition, either. (Oliva Dep., 43:8-44:2.) Furthermore, Oliva's complaints about the Daley Center courthouse being "some 21.5 miles further from [his] home than the Bridgeview courthouse" (Compl., para 27) ring hollow because Oliva never had to personally appear in court in connection with the case. (Oliva Dep., 37:12-16; 48:4-13.) And even if he had, he admits that the Daley Center courthouse would have been more convenient for him because he worked downtown. (Oliva Dep., 50:12-53:5.)

More convenient for his lawyers, as well, no doubt, who have a heavy practice in the federal bankruptcy court downtown and could avoid having to traipse out to Bridgeview. Notably, at no point during the Collection Case did Oliva raise an objection based on improper venue, or seek to transfer venue to the Bridgeview courthouse based upon the "inconvenience" of litigating at the Daley Center. (Wake Dec., para. 18.) Indeed, when it came time to file the FDCPA case, Oliva and his counsel chose to file in the federal court downtown, even though the FDCPA provides for concurrent jurisdiction among the state and federal courts, *see* 15 U.S.C. §1692k(d), which means this case could just have well been filed in the Cook County Circuit Court, in the Bridgeview courthouse. The irony of that should not be lost on anyone.

This case is a perfect example of lawyer-driven litigation. Oliva was so disengaged from the Collection Case that he was not even aware, until BHLM took his deposition on March 25, 2015, that the Collection Case had been dismissed eight months earlier, in July 2014. (Oliva Dep., 40:3-11.) Nor was he aware that BHLM had refunded his $186 filing fee to his counsel. (Oliva Dep., 42:6-24.) And until his deposition, he had never seen his own FDCPA complaint. (Oliva Dep., 43:8-44:2.)

His counsel, on the other hand, have been fully engaged, filing twenty-eight (28) cases against BHLM, as well as dozens more against the other major collection law firms in Chicago,

all based on "retroactive" *Suesz* claims.  They have actively solicited clients to file these claims, through mailings like the one sent to Perry Bianco (*see* Exhibit B, attached hereto), whose case against BHLM was voluntarily dismissed with prejudice after he failed to appear for deposition. *Bianco v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.*, Case No. 14-cv-7866 (N.D. Ill.). To date, not one of these "*Suesz*" cases has been successful; several have already been dismissed on statute of limitations or standing grounds, while others have been abandoned through voluntary dismissals.[2]  Motions to dismiss or for judgment on the pleadings are pending in several cases.[3]  Others, like the instant case, are now moving into the summary judgment stage.

---

[2] *Mako v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9600 (N.D. Ill. Jan. 20, 2015) (dismissed as time-barred); *Komisar v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-7948 (N.D. Ill. Jan. 29, 2015) (dismissed as time-barred); *Komisar v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-7950 (N.D. Ill. Jan. 29, 2015) (dismissed as time-barred); *Ford v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9601 (N.D. Ill. Feb. 4, 2015) (dismissed as time-barred); *Smith v. Markoff Law LLC,* Case No. 14-cv-07809 (N.D. Ill. Feb. 4, 2015) (dismissed as time-barred); *Padilla v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-7650 (N.D. Ill. Feb. 5, 2015) (dismissed as time-barred); *Jackson v. Blitt & Gaines, P.C.,* Case No. 14-cv-08625 (N.D. Ill. Feb. 18, 2015) (dismissed as time-barred); *Balik v. Blitt & Gaines, P.C.,* Case No. 14-cv-8702 (N.D. Ill. Feb. 21, 2015) (dismissed for lack of standing where plaintiff failed to disclose FDCPA claim in bankruptcy filing); *Henciek v. Law Office of Keith S. Shindler, Ltd.,* Case No. 14-cv-07149 (N.D. Ill. March 3, 2015) (dismissed as time-barred); *Pihl v. Law Office of Keith S. Shindler, Ltd.,* Case No. 14-cv-07149 (N.D. Ill. Mar. 3, 2015) (dismissed as time-barred); *Etro v. Blitt and Gaines, P.C.,* Case No. 14-cv-8924 (N.D. Ill. Mar. 18, 2015) (dismissed as time-barred); *Sapula v. Blitt & Gaines, P.C.,* Cse No. 14-cv-7494 (N.D. Ill. Mar. 24, 2015) (dismissed as time-barred); *Hill v. Freedman Anselmo Lindberg, LLC,* Case No. 14-cv-10004 (N.D. Ill. May 1, 2015) (dismissed as time-barred); *Grasse v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 14-cv-8573 (N.D. Ill.) (voluntary dismissal with prejudice after BHLM filed motion to dismiss); *Cerda v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 14-cv-7813 (N.D. Ill.) (voluntary dismissal with prejudice); *Bianco v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 14-cv-7866 (N.D. Ill.) (voluntary dismissal with prejudice); *Summers v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9602 (N.D. Ill.) (voluntary dismissal with prejudice); *Carol Summers v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-9603 (N.D. Ill.) (voluntary dismissal with prejudice).

[3] *Knight v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-8169 (N.D. Ill.) (motion for judgment on the pleadings; no FDCPA violation where collection case never served); *Hayward v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 14-cv-9030 (N.D. Ill.) (motion for judgment on the pleadings as time-barred); *Campbell v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* Case No. 14-cv-10003 (N.D. Ill.) (motion for judgment on the pleadings as time-barred)*; Pickett v. Blatt, Hasenmiller, Leibsker & Moore, LLC, et al.,* Case No. 15-cv-2205 (N.D. Ill.) (motion to dismiss based on plaintiff's failure to disclose FDCPA claim in bankruptcy filing).

**A.     Standard for Summary Judgment.**

Summary judgment is warranted when the pleadings, depositions, affidavits and other materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *see AA Sales & Assocs. v. Coni-Seal*, 550 F.3d 605, 608 (7th Cir. 2008). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003).

**B.     BHLM Did Not Err in Filing the Collection Case in the First Municipal District But Any Error in Doing So Was a Bona Fide Error, Precluding Liability.**

"A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. §1692k(c). To qualify for the bona fide error defense, a defendant must show: (1) that the presumed FDCPA violation was not intentional; (2) that the presumed FDCPA violation resulted from a bona fide error; and (3) that it maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). Here, BHLM meets all of these elements.

**First**, the alleged violation was not intentional. BHLM's filing of the Collection Case in the First Municipal District was in conformance with then-existing law. The Seventh Circuit has explained that a debt collector "may avail itself of the bona fide error defense because it had no

intent to violate the FDCPA, although its actions were deliberate." *Nielsen v. Dickerson,* 307 F.3d 623, 641 (7th Cir. 2002); *see also Kort*, 394 F.3d at 537 ("[a] debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional."). In *Kort*, the Seventh Circuit held that because the defendant followed the government's interpretation of the law, as expressed in a form garnishment document, it did not intentionally violate the FDCPA and was entitled to the bona fide error defense. *Kort*, 394 F.3d at 537. Here, as in *Kort*, BHLM was following a government entity's (the judiciary's) interpretation of the FDCPA. Accordingly, the presumed violation was not intentional.

**Second**, the alleged violation resulted from a bona fide error. While the Supreme Court held that the bona fide error defense "does not apply to a violation of the FDCPA *resulting from a debt collector's* incorrect interpretation of the requirements of that statute," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010) (emphasis added), BHLM's defense does not rest on its *own* interpretation of the law. Rather, BHLM followed the controlling law in this Circuit, which addressed the specific venue issue in Cook County and held that the language of the statute was plain and unambiguous – meaning that it was not subject to change. *See, e.g., Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances."), *superseded on other grounds*, 28 U.S.C. § 1821 (1993); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982) (explaining that where a court finds statutory language unambiguous, further inquiry is warranted only in rare cases). The only "error" BHLM made was in not divining "the 180-degree turnaround" by the Seventh Circuit. *See Balik v. Blitt and Gaines, P.C.*, No. 14-8702, 2015 WL 764013, at *2 (N.D. Ill. Feb. 21,

2015) (noting "the rather unusual circumstances regarding the 180-degree turnaround in the law that took place" when the Seventh Circuit overruled *Newsom*).

Notably, the FDCPA expressly affords protection from any liability where the conduct is "in good faith conformity with any advisory opinion of the FTC." *See Jerman*, 559 U.S. at 588 (citing 15 U.SC. § 1692k(e) and noting "the role Congress evidently contemplated for the FTC in resolving ambiguities in the Act"). While Congress gave the FTC the power to interpret the FDCPA in order to resolve ambiguities, the courts have the ultimate interpretive power. *See, e.g. Jerman*, 559 U.S. at 589-90 (noting that judicial interpretations can settle the meaning of an existing statutory provision). In fact, the statute notes that judicial authority can invalidate the FTC opinion, *see* 15 U.S.C. § 1692k(e), and courts provide no deference to FTC advisory opinions under the FDCPA. *See, e.g., Dutton v. Wolpoff & Abramson*, 5 F.3d 649, 654 (3d Cir. 1993) ("the FTC's advisory opinions are not entitled to deference in FDCPA cases except perhaps to the extent that their logic is persuasive."); *see also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) (holding the same). Thus, a judicial interpretation of the statute issued from an appellate court and which is binding on the district courts within its circuit, should be provided *at a minimum* the weight of an FTC advisory opinion in determining good faith conduct.

The Seventh Circuit's decision in *Newsom* was *the controlling* interpretation in this Circuit and it was binding on the district courts. BHLM had a good faith basis to rely upon this judicial interpretation. The holding in *Newsom* had stood for eighteen years. There was no circuit split, no ambiguity to its binding authority, and no attempt by Congress to alter or limit the holding. Indeed, following *Newsom*, "the only other circuit court to directly consider the issue adopted the exact same definition" of the term "judicial district." *Suesz*, 757 F.3d at 658 (J.

Kanne, dissenting) (citing *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 121 (2d Cir. 2011)). Unlike the conflicting statutory interpretations at issue in *Jerman*, the law with regard to Section 1692i(a)(2) was settled within the Seventh Circuit. "The longstanding acceptance by the courts, coupled with Congress' failure to reject [that] interpretation…argues significantly in favor of acceptance of [it]." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 733 (1975). Thus, BHLM had a good faith basis to act in conformity with the holding in *Newsom*. *See Kort*, 394 F.3d at 538 (finding that the defendant was entitled to bona fide error defense where it erroneously applied a garnishment notice "because the DOE, the government agency invested with regulatory authority under the [statute], misinterpreted the [statute].")

**Third**, BHLM maintains procedures reasonably adapted to avoid any such error. Ken Wake, the Executive Director of BHLM, has practiced collection law for nearly 20 years and has personally litigated hundreds of collection cases in the Illinois courts and acted in an oversight and supervisory role on thousands more. (Wake Dec., paras. 1-2.) As Executive Director of BHLM, Mr. Wake is responsible for managing most day to day operations of the firm, including compliance. (Wake Dec., para. 5.) This requires Mr. Wake to stay current with the FDCPA and applicable case law, as well as keeping current with developments at the Federal Trade Commission ("FTC"), the Consumer Financial Protection Bureau ("CFPB"), or other agencies which regulate the industry. (*Id*.) Mr. Wake does this in a number of ways:

   a. Mr. Wake has been deeply involved as a member of the National Association of Retail Collection Attorneys ("NARCA") (including serving on the NARCA Client Trust Account Task Force and the NARCA Governance Review Task Force) which allows him to interact with hundreds of other attorneys and in-house counsel engaged in debt collection, and to stay abreast of changes in the law and developments in the industry. Through publications, webinars, and regular conferences, NARCA keeps its members informed regarding FDCPA developments and new FDCPA case law. Mr. Wake has routinely attended NARCA events over the years, most recently the NARCA 2015 Spring Collection Conference in Nashville, TN on May 6-9, 2015,

where the agenda includes several sessions on the FDCPA.[4] He has also been a presenter at these events, including most recently as a panelist on the subject of "*The Changing FDCPA: Legislative Reform, the CFPB's Role, Case Law Updates and Trends*" at the NARCA Legal Learning Conference in Chicago on September 16, 2014[5]; "*Meaningful Attorney Review and the Supervision of Non-Attorney*" at the NARCA Legal Learning Conference held in Las Vegas on October 24, 2014[6]; and "*How to Protect your Small Firm by Keeping Your Venders Compliant*" is at the NARCA Legal Learning Conference held in Nashville on May 8, 2015.[7] (Wake Dec., para. 5.a.)

  b.  Mr. Wake is a member and Past President of the Illinois Creditors Bar Association ("ILCBA"), a state-wide organization for attorneys practicing in the area of creditors' rights, including consumer debt collection. ILCBA is an accredited CLE provider and provides quality, affordable continuing legal education to its members by hosting several CLE courses each year and by offering legal updates via its monthly eNews, including with respect to the FDCPA. Mr. Wake regularly participates in these events and, in fact, is often asked to be a presenter, most recently at the ILCBA Spring Seminar in Chicago on February 16, 2015 where he participated in a panel discussion on the impact of the *Suesz* case.[8] (Wake Dec., para. 5.b.)

  c.  Mr. Wake regularly reviews various publications and listserves that focus on the FDCPA and new case law. These include InsideARM, ILCBA listserve, NARCA listserve, State Bar and Creditor Bar listserves or daily e-newsletters, and case update services, among others. In addition, he regularly consults with and receives FDCPA updates from BHLM's two primary outside counsel, David Hartsell at McGuireWoods LLP and David Schultz at Hinshaw Culbertson, both of whom are considered experts in the FDCPA. (Wake Dec., para. 5.c.)

  d.  Mr. Wake is also in regular communication with the consumer FDCPA bar, so as to better understand their concerns, and has served on numerous FDCPA discussion and CLE panels with prominent consumer attorneys. (Wake Dec., para. 5.d.)

In short, BHLM maintains robust practices and procedures to stay abreast of the law to ensure FDCPA compliance.

Likewise, BHLM has reasonable procedures in place to determine the debtor's correct address and, accordingly, the proper venue for suit. When a creditor places an account with BHLM for collection, BHLM checks the consumer's address against the National Change of

---

[4] https://www.narca.org/?page=Spring15Home
[5] https://www.narca.org/?NL2Chicago2014
[6] http://www.narca.org/?page=Fall14Home
[7] http://www.narca.org/?page=Spring15Home
[8] http://www.ilcba.org/education/

Address database. (Wake Dec., para. 7.) In addition, BHLM has developed and built an in-house systematic venue tagging process which utilizes the zip code associated with the account address, and ties it to a specific Illinois county. (*Id*.) Finally, BHLM pulls a credit report to confirm, among other things, that it has the debtor's correct address or whether it needs to be updated. (*Id*.)

The initial demand letter is then sent by first class mail, postage prepaid. BHLM monitors all returned or undeliverable mail and, in such a case, will search for a new address using a variety of "skip trace" tools including Accurint reports (a LexisNexis product) and Trans Union's TOL on-line data base. (Wake Dec., para. 8.) Once a new address is located, BHLM re-sends the initial demand letter. BHLM will follow up by calling the debtor and, as part of that conversation, confirm the correct address and make updates as necessary. (Wake Dec., para. 9.)

Once the account moves into the suit preparation stage, a BHLM attorney reviews the file to confirm, among other things, the proper venue for the suit. (Wake Dec., para. 10.) In the case of debtors who resided within Cook County, Illinois, and prior to July 3, 2014, BHLM's practice was to confirm the debtor's place of residence (following the procedures set forth above) and then follow the FDCPA's venue requirements as construed and applied by the Seventh Circuit in *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), which held that for purposes of Section 1692i(a)(2), "judicial district" meant the Cook County Circuit Court as established by the Illinois Legislature and not the various municipal subdivisions established by the Circuit Court. (Wake Dec., para. 11.) Thus, BHLM, as well as the other major collection law firms, routinely filed their collection cases at the Daley Center in downtown Chicago, in the First Municipal District, as long as the debtor resided within Cook County.[9] (*Id*.)

---

[9] There were practical considerations for this practice, as well. Many consumers, especially those who rely upon public transportation, find it easier to travel from the outlying areas of Cook County to the

In the instant case, according to the information provided by PRA at the time it placed this account with BHLM, plaintiff's debt originated as a HSBC Bank MasterCard, which was charged off in 2012 with a balance of $8205.20, and subsequently acquired by Capital One and then PRA. (Wake Dec., para. 16.) Plaintiff's address was listed as 1506 W. Grand Ave., Chicago, IL 60642. (*Id.*) After confirming that address via the procedures described above, BHLM sent an initial demand letter to plaintiff at that address on September 16, 2013. (*Id.*; Oliva Dep., 16:2-17:9 and Dep. Exh. 1.)

As part of the suit preparation process described above, BHLM determined that plaintiff was now residing at 15611 Sunrise Lane, Orland Park, IL 60462. (Wake Dec., para. 17.) This did not change the venue analysis, however, because plaintiff was still residing within Cook County and, therefore, consistent with *Newsom* and the firm's policies and procedures at the time, the lawsuit could be and was filed at the Daley Center, in the First Municipal District, on December 10, 2013. (*Id.*.)

This procedure changed in July 2014, when a divided *en banc* panel in *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014), overruled *Newsom* and held that "judicial district" meant instead the smallest existing geographical unit within the state court system. (Wake Dec., para. 13.) Mr. Wake first learned of the *Suesz* decision on the morning of July 3, 2014, the day after it was issued, when he received an email from Dan Edelman, the lead plaintiff's counsel in

---

downtown Daley Center (via Metra or the CTA), than to travel across the county, which might involve multiple bus transfers and a less direct route to one of the other courthouses. Many of those consumers might already work downtown, making it easier to step away from work for an hour to attend court at the Daley Center, as opposed to taking a day off to attend court in one of the outlying courthouses. Furthermore, the Daley Center courthouse has developed a substantial infrastructure for handling collection cases, including the CARPLS help desk, which does not exist and cannot be replicated, given budgetary constraints, at each of the five other outlying courthouses. It has always been the case, however, that the debtor could seek a transfer to one of the other municipal districts based on convenience, and BHLM has never opposed such a request. (Wake Dec., para. 12.)

*Suesz*, attaching a copy of the opinion. (Wake Dec., para. 14.) After reviewing the opinion, Mr. Wake directed his attorneys and litigation staff that, effective immediately, any new filings within Cook County would have to comply with *Suesz* and be filed in the applicable municipal district. (*Id.*) Within a matter of days, Mr. Wake also formally revised the venue compliance section of BHLM's "Suit and Litigation Process Operating Procedures" manual to incorporate these new requirements for Cook County filings. (*Id.*) Since that time, BHLM has been engaged with Cook County to navigate the transfer of those cases pending at the Daley Center which, based on the debtor's place of residence, need to be moved to one of the outlying municipal districts, a process which is still ongoing. (Wake Dec., para. 15.)

The reasonableness of BHLM's decision to rely on the Seventh Circuit's then-interpretation of the FDCPA's venue provisions and to monitor any changes in the law is beyond question. Indeed, in an analogous case, the Seventh Circuit held that "[a]n entirely reasonable procedure to avoid misinterpreting and misapplying a federal statute…is to adopt the legal interpretation of the federal agency charged with regulating under the statute in question." *See Kort*, 394 F.3d at 538. In *Kort*, the Court found that the defendant's "complete reliance on the [government agency's] form demonstrates its reasonable effort to comply with the statute." *Id.* Here, BHLM was not merely following the interpretation from a federal agency but, rather, following the interpretation provided by the Seventh Circuit. Clearly, this demonstrates a reasonable effort to comply with the FDCPA. Accordingly, BHLM is entitled to the bona fide error defense as a matter of law, *see Kort*, 394 F.3d at 539, and summary judgment should be entered in its favor.

**C.     BHLM's Reliance on Controlling Judicial Precedent Brings It Within the FDCPA's "Safe Harbor."**

As noted above, the FDCPA provides a safe harbor for a defendant's reliance upon FTC advisory opinions, providing:

> No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, *notwithstanding* that *after such act* or omission has occurred, such *opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.*

15 U.S.C. § 1692k(e) (emphasis added).  As argued above, judicial interpretations, particularly appellate court decisions that are binding on the courts within this Circuit and which have stood for eighteen years, warrant *at a minimum* the same weight as an FTC advisory opinion.  In light of the fact that Congress *expressly prohibited the retroactive application* of a *judicial ruling* that invalidates an FTC advisory opinion, prospective application of a new rule overruling *binding circuit precedent* aligns with the statutory purpose.  Therefore, BHLM should be afforded the safe harbor protection for having acted in conformance with binding circuit precedent.

**D.     Suesz Should Not Be Applied Retroactively to BHLM.**

While the court in *Suesz* determined that its decision, overruling the law of eighteen years, would apply retroactively, its ruling was limited to "debt collectors in Marion County." *Suesz*, 757 F.3d at 650.  Moreover, Suesz cannot apply retroactively to BHLM without depriving it of due process.  Unlike the parties to *Suesz*, BHLM did not have the opportunity to raise its arguments and defenses to its actions, which at the time the Court had affirmatively deemed in compliance with the FDCPA. To hold BHLM retroactively liable for having followed established circuit precedent when it filed the Collection Case at issue here ignores fundamental fairness and due process.

The *Suesz* court held that there was no basis for giving prospective effect "on the basis of justified reliance by (in this case) debt collectors *in Marion County*." *Suesz*, 757 F.3d at 650 (emphasis added). As the Seventh Circuit recognized mere weeks later, "retroactive application to the litigant whose case gave rise to the new rule" can be justified because "that person had an opportunity to present argument" and "ran the risk" that his case would be used to announce the new rule. *Velasquez-Garcia v. Holder*, 760 F.3d 571, 580-81 (7th Cir. 2014), *reh'g denied* (Oct. 10, 2014). However, non-parties did not have the opportunity to be heard and were not aware of the risk. *Id.* at 581. If retroactive application of a new rule resulting from an agency determination to non-parties would deprive those non-parties of due process and fundamental fairness, retroactive application of *Suesz* to BHLM would similarly deprive it of due process and fundamental fairness.

Because *Newsom* had stood for eighteen years, *it did* represent the degree of certainty warranting reliance, certainly with respect to how the FDCPA venue rules applied to Cook County. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 545 (11th Cir. 2002) (en banc) ("It would be inequitable to punish those parties for following the clearly established precedent of this Circuit."). BHLM had a reasonable basis to rely upon a binding decision in this Circuit which specifically addressed the application of Section 1692i(a)(2) *within the Circuit Court of Cook County*. The *Newsom* court examined the same Cook County court system at issue in this case whereas *Suesz* examined an entirely different court system in Marion County, Indiana. It may well be the case that the distinctions between the two court systems warrants *Suesz's* holding that "debt collectors in Marion County" could not have justifiably relied upon *Newsom, Suesz*, 757 F.3d at 650, but under the same logic and for the same reason debt collectors in Cook County *should* have been able to justifiably rely upon *Newsom*. While *Suesz*

dismissed *Newsom* as just "one intermediate appellate court" decision which did not justify reliance by debt collectors in Marion County, it was the *only* appellate court opinion and, more importantly, the only one that mattered for debt collectors in Cook County.

In *Chevron Oil*, the Supreme Court made clear that decisions from the court of appeals can be justifiably relied upon:

> [T]hese Court of Appeals decisions represented the law governing his case. It cannot be assumed that he did or could foresee that this consistent interpretation of the Lands Act would be overturned. The most he could do was to rely on the law as it then was. 'We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights.' *Griffin v. Illinois*, 351 U.S. 12, 26, 76 S.Ct. 585, 594, 100 L.Ed. 891 (Frankfurter, J., concurring in judgment).

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 107 (1971). In *Suesz*, and a few weeks later in *Velasquez-Garcia*, the Seventh Circuit acknowledged that Supreme Court has left open the prospective effect analysis in *Chevron Oil*. *Suesz*, 757 F.3d at 649; *Velasquez-Garcia*, 760 F.3d at 580. Indeed, every Court of Appeals to have decided the issue has consistently held that the *Chevron Oil* analysis still applies.[10] *See Nunez-Reyes v. Holder*, 646 F.3d 684, 691 (9th Cir. 2011) (holding that its decision which overruled 9th Circuit precedent should be applied on a prospective basis under the *Chevron Oil* factors); *Crowe v. Bolduc*, 365 F.3d 86, 94 (1st Cir. 2004) ("We think that it would be patently unfair to subject a party to a forfeiture for assiduously following binding circuit precedent."); *Glazner v. Glazner,* 347 F.3d 1212, 1216–17 (11th Cir. 2003) (en banc) ("the [Supreme] Court has clearly retained the possibility of pure prospectivity and, we believe, has also retained the *Chevron Oil* test, albeit in a modified form, as the

---

[10] The Supreme Court has instructed the Courts of Appeals to continue following Supreme Court precedent until the Court itself expressly overrules a decision. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 484 (1989). Therefore, this court and the Seventh Circuit are still bound by the decision in *Chevron Oil*. *See Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011).

governing analysis for such determinations in civil cases."); *Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 91 (2d Cir. 1998) (applying *Chevron Oil* test).

Under *Chevron Oil*, it is clear that *Suesz* should not have retroactive effect with respect to debt collectors filing collection cases in Cook County. Courts analyzing retroactive application under *Chevron Oil*, examine three factors:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied…or by deciding an issue of first impression whose resolution was not clearly foreshadowed…Second, it has been stressed that we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation….Finally, we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.

*Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971) (internal quotations and citations omitted). The inquiry "demands a commonsense, functional judgment" and "should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations." *Velasquez-Garcia*, 760 F.3d at 579 (quoting *Martin v. Hadix,* 527 U.S. 343, 357–58 (1999)).

The *Chevron Oil* factors stem from the general rule that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). As the Supreme Court has explained and the Seventh Circuit recently emphasized:

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal.

*Velasquez-Garcia*, 760 F.3d at 579 (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994)) (internal quotation and citations omitted); *see also Landgraf*, 511 U.S. at 266 (noting that the "Due Process Clause also protects the interests in fair notice and repose").

Looking to the *Chevron Oil* factors in this case, the *Suesz* decision overruled clear past precedent on which BHLM relied. *Newsom* was the law for eighteen years. No court questioned it and the only other circuit court to analyze the issue adopted the same definition. In addition, *Newsom* addressed the exact Cook County court system at issue in this case, inducing BHLM's reliance.

Second, the prospective application will not hinder the purpose of the new rule. Congress expressed a clear intent to create a safe harbor for debt collectors who relied upon the government's interpretation of the statute, expressly prohibiting the retroactive application of judicial rulings in such instances. *See* 15 U.S.C. §1692k(e). Therefore, the prospective application of a new rule overruling binding circuit precedent aligns with that statutory intent. *See Nunez-Reyes*, 646 F.3d at 694 (9th Cir. 2011) (determining that "[i]n light of the rule's history, purpose, and effect, retroactive application will not further the rule's operation.").

Finally, the balance of equities favors prospective application. Unlike in *Suesz,* where which debt collectors were purposefully filing in inconvenient outlying forums, BHLM filed its action in the centrally located county seat (which is the standard location throughout all of the other Illinois county courts). Despite now claiming that Chicago was an inconvenient or improper forum, Oliva was not deterred at all from "appearing and defending" against the Collection Case. To the contrary, he hired the Sulaiman Law Group and paid them a $1700 retainer to defend him on an $8205.20 debt that he admittedly owes. (Oliva Dep., 20:13-21-22; 15:3-18:3; 34:14-24; 56:9-70:4.) The fact that the Collection Case was filed in the First

Municipal District (Daley Center) as opposed to the Fifth Municipal District (Bridgeview) was irrelevant to him; he testified that "I would say that it only matters to me because it matters to my lawyer." (Oliva Dep., 48:2-49:8.) Indeed, Oliva admitted that he didn't even understand the venue issue until the morning of his deposition. (Oliva Dep., 35:7-36:4.) Furthermore, Oliva's complaints about the Daley Center courthouse being "some 21.5 miles further from [his] home than the Bridgeview courthouse" (Compl., para 27) ring hollow because Oliva never had to personally appear in court in connection with the case. (Oliva Dep., 37:12-16; 48:4-13.) And even if he had, he admits that the Daley Center courthouse would have been more convenient for him because he worked downtown. (Oliva Dep., 50:12-53:5.) Notably, at no point during the Collection Case did Oliva raise an objection based on improper venue, or seek to transfer venue to the Bridgeview courthouse based upon the "inconvenience" of litigating at the Daley Center. (Wake Dec., para. 18; *see also* Compl., Exhibit A.) Indeed, when it came time to file the FDCPA case, Oliva and his counsel chose to file in the federal court downtown, even though the FDCPA provides for concurrent jurisdiction among the state and federal courts, *see* 15 U.S.C. §1692k(d), which means this case could just have well been filed in the Cook County Circuit Court, in the Bridgeview courthouse.

The *Suesz* decision triggered this case and dozens of others since August 2014, by the same plaintiff's counsel, all for conduct that complied with the law at the time. *See Velasquez-Garcia*, 760 F.3d at 582 (finding that the new rule of law could not apply retroactively to person "who had no notice that the rules were about to change and who may have relied on the former legal regime" and "even though [his] earlier conduct may well have satisfied the legal requirements in effect at the time he took those steps"); *see also Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 545 (11th Cir. 2002) (en banc) ("It would be inequitable to

punish those parties for following the clearly established precedent of this Circuit."). This case is the result of plaintiff's attempt to take advantage of the *Suesz* decision, rather than redressing some perceived wrong.

"The potential for unfairness in the retroactive application" of the *Suesz* decision "is significant and manifest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 323 (2001). Accordingly, this court should hold that under *Chevron Oil* and the safe harbor provision of the FDCPA, the *Suesz* decision does not apply retroactively to BHLM.

**D.    The Collection Case Was Filed in the District Where the Contract Was Made.**

Plaintiff's claim also must fail as he completely disregards the second prong of a claim arising under Section 1692i(a)(2). That section limits the bringing of a collection action to the judicial district or similar legal entity in which the consumer resides at the commencement of the action *or* "in which such consumer signed the contract sued upon." 15 U.S.C. § 1692i(a)(2)(A). In order to have a claim for violation of this Section, a plaintiff must prove *both* that he did not reside in and he did not enter into the contract in the "judicial district" in which the suit was filed.

Here, Oliva failed to even plead that the contract was not entered into in Chicago (*i.e.*, First Municipal District). That fact alone warrants summary judgment in favor of BHLM. "[S]ummary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also* Fed. R. Civ. P. 56(c)(1)(B). In this case, Oliva bears the burden of proving that the contract upon which he was

sued was not formed in the First Municipal District – the judicial district in which he was sued. He has not presented any evidence on this issue. Therefore, his claim fails as a matter of law.

Moreover, the evidence demonstrates that the contract did arise in Chicago. Under Illinois law, "each time the credit card is used, a separate contract is formed." *Portfolio Acquisitions, L.L.C. v. Feltman*, 391 Ill. App. 3d 642, 649 (2009) (citing *Garber v. Harris Trust & Savings Bank*, 104 Ill.App.3d 675, 678 (1982)). Oliva testified that he thought he opened the MasterCard account in 1997 or 1998, but that in any event he had the card while a student at DePaul University, where he graduated in 2005. (Oliva Dep., 15:3-13; 8:5-22.)[11] For a "majority of the time" while attending DePaul, Oliva lived on or around campus. (Oliva Dep., 11:12-12:8.) After graduation, he took a job with CDW where he worked first at the Mundelein location for about a year (2005-2006) before being transferred to the downtown location at 120 South Riverside where he worked until January 2015. (Oliva Dep., 9:5-11:9.) While at the Mundelein location, Oliva lived in Arlington Heights. (Oliva Dep., 12:9-17.). Once Oliva was transferred downtown, he lived in Orland Park for about a year before relocating back to the city, living first by the UIC campus and then "pretty much [the] downtown area." (Oliva Dep., 12:19-13:11.)

At a minimum, in addition to his time at DePaul, Oliva lived in Chicago continuously from about 2008 through January 2015. As such, it is reasonable to conclude that the charges he incurred on his MasterCard were incurred in Chicago. Indeed, Oliva acknowledged that he was using the card for personal use (clothing, food, entertainment, gas, etc.), most or all of it incurred in the city. (Oliva Dep., 53:14-56:1.) The monthly statements for 2012 reflect just that, showing charges to Wrigley Field, Dimos Pizza, Shell Oil, CVS Pharmacy and Jewell in Chicago. (Oliva Dep., 56:9-70:4 and Dep. Exh. 11; Wake Dec., para. 19.)

---

[11] The HSBC monthly statements refer to Oliva as a "Valued Cardmember Since 2002" and Oliva acknowledged he could have been thinking about a different card when he referred to 1997 or 1998. (Oliva Dep., 59:10-60:6 and Dep. Exh. 11.)

Whether the contract was "signed" in the location of the charges, or the location where plaintiff was billed (his residence), the contract was formed in Chicago. As such, the filing of the collection action in the First Municipal District did not violate Section 1692i(a)(2). Accordingly, summary judgment must be entered in favor of BHLM.

## <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should enter in favor of BHLM and against plaintiff.

Dated:  May 8, 2015                              BLATT, HASENMILLER, LEIBSKER & MOORE, LLC


By:     /s/David L. Hartsell_____
          One of Its Attorneys


David L. Hartsell
Helen D. Arnold
McGUIREWOODS LLP
77 W. Wacker Drive, Suite 4100
Chicago, Illinois  60601-1818
(312) 849-8100
(312) 849-3690 (fax)
dhartsell@mcguirewoods.com
harnold@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the CM/ECF system on May 8, 2015, which constitutes service on below counsel who are registered electronic filing users, pursuant to FED. R. CIV. P. 5(b)(2)(D) and L.R. 5.9:

> Ahmad Tayseer Sulaiman, First
> Sulaiman Law Group, Ltd.
> ahmad.sulaiman@sulaimanlaw.com
>
> Daniel J. McGarry, Esq.
> Sulaiman Law Group, Ltd.
> dmcgarry@sulaimanlaw.com
>
> Mohammed O. Badwan, Esq.
> Sulaiman Law Group, Ltd.
> mbadwan@sulaimanlaw.com

/s/David L Hartsell