IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD OLIVA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-06447 |
| | ) | |
| v. | ) | Judge Elaine E. Bucklo |
| | ) | |
| BLATT, HASENMILLER, LEIBSKER & MOORE, LLC, | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS**

NOW COMES defendant Blatt, Hasenmiller, Leibsker & Moore, LLC, ("BHLM"), by its undersigned attorneys and, pursuant to Local Rule 56.1(a)(3), submits this Statement of Material Facts as to which there is no genuine issue and that entitles BHLM to judgment as a matter of law:

1.  Plaintiff Ronald Oliva is an individual currently residing in Orland Park, Illinois. (Compl., para. 13.)

2.  Defendant Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM") is a law firm, organized as a limited liability company under the laws of the State of Illinois. (Declaration of Kenneth R. Wake, para. 2, hereinafter "Wake Dec.".) [1]

3.  Jurisdiction and venue are proper in this District pursuant to Section 1692k(d) of the Fair Debt Collection Practices Act ("FDCPA"), pursuant to which this case is brought. 15 U.S.C. §1692k(d).

4.  This case arises out of a debt collection lawsuit filed against Ronald Oliva ("Oliva") on December 10, 2013 by Portfolio Recovery Associates, LLC ("PRA") in the Cook

---

[1] A true and correct copy of the Wake Declaration is attached here as Exhibit 1.

County Circuit Court, *Portfolio Recovery Associates, LLC v. Ronald Oliva*, No. 13 M1 168468 (the "Collection Case"), seeking to recover on an unpaid $8205.20 credit card account. (Compl., para. 8.)

5. Oliva was represented in the Collection Case by the Sulaiman Law Group, Ltd., the same attorneys who represent him in the instant case. (Deposition of Ronald Oliva, March 25, 2015, 25:12-26:14, hereinafter "Oliva Dep.".) [2]

6. Oliva was not deterred from "appearing and defending" against the Collection Case. To the contrary, he hired the Sulaiman Law Group and paid them a $1700 retainer to defend him. (Oliva Dep., 20:13-21-22.)

7. Oliva never disputed and admits that he owes the balance due. (Oliva Dep., 15:3-18:3; 34:14-24; 56:9-70:4.)

8. The fact that the Collection Case was filed in the First Municipal District (Daley Center) as opposed to the Fifth Municipal District (Bridgeview) was irrelevant to Oliva; he testified that "I would say that it only matters to me because it matters to my lawyer." (Oliva Dep., 48:2-49:8.)

9. Oliva admitted that he didn't even understand the venue issue until the morning of his deposition. (Oliva Dep., 35:7-36:4.)

10. Oliva had never seen his FDCPA complaint before the deposition. (Oliva Dep., 43:8-44:2.)

11. Oliva never had to personally appear in court in connection with the case. (Oliva Dep., 37:12-16; 48:4-13.)

---

[2] A true and accurate copy of the Oliva Deposition is attached here as Exhibit 2.

12. Oliva admits that the Daley Center courthouse would have been more convenient for him than the Bridgeview courthouse because he worked downtown at the time. (Oliva Dep., 50:12-53:5.)

13. At no point during the Collection Case did Oliva raise an objection based on improper venue, or seek to transfer venue to the Bridgeview courthouse based upon the "inconvenience" of litigating at the Daley Center. (Wake Dec., para. 18.)

14. The Collection Case was voluntarily dismissed without prejudice on July 10, 2014. (Wake Dec., para. 18.)

15. Oliva was not even aware, until BHLM took his deposition on March 25, 2015, that the Collection Case had been dismissed eight months earlier, in July 2014. (Oliva Dep., 40:3-11.)

16. Nor was he aware that BHLM had refunded his $186 filing fee to his counsel. (Oliva Dep., 42:6-24.)

17. Oliva and his counsel chose to file the FDCPA case in the federal district court downtown, even though the FDCPA provides for concurrent jurisdiction among the state and federal courts, which means this case could just have well been filed in the Cook County Circuit Court, in the Bridgeview courthouse. *See* 15 U.S.C. §1692k(d),

18. Until his deposition, Oliva had never seen his own FDCPA complaint. (Oliva Dep., 43:8-44:2.)

19. Oliva thought he opened the HSBC MasterCard account in 1997 or 1998, but in any event he had the card while a student at DePaul University, where he graduated in 2005. (Oliva Dep., 15:3-13; 8:5-22.)

20. The HSBC monthly statements refer to Oliva as a "Valued Cardmember Since 2002" and Oliva acknowledged he could have been thinking about a different card when he referred to 1997 or 1998. (Oliva Dep., 59:10-60:6 and Dep. Exh. 11.)

21. For a "majority of the time" while attending DePaul, Oliva lived on or around campus. (Oliva Dep., 11:12-12:8.)

22. After graduation, he took a job with CDW where he worked first at the Mundelein location for about a year (2005-2006) before being transferred to the downtown location at 120 South Riverside where he worked until January 2015. (Oliva Dep., 9:5-11:9.)

23. While at the Mundelein location, Oliva lived in Arlington Heights. (Oliva Dep., 12:9-17.).

24. Once Oliva was transferred downtown, he lived in Orland Park for about a year before relocating back to the city, living first by the UIC campus and then "pretty much [the] downtown area." (Oliva Dep., 12:19-13:11.)

25. Oliva acknowledged that he was using the card for personal use (clothing, food, entertainment, gas, etc.), most or all of it incurred in the city. (Oliva Dep., 53:14-56:1.)

26. The monthly statements for 2012 reflect charges at Wrigley Field, Dimos Pizza, Shell Oil, CVS Pharmacy and Jewell, all in Chicago. (Oliva Dep., 56:9-70:4 and Dep. Exh. 11; Wake Dec., para. 19.)

27. Ken Wake, the Executive Director of BHLM, has practiced collection law for nearly 20 years and has personally litigated hundreds of collection cases in the Illinois courts and acted in an oversight and supervisory role on thousands more. (Wake Dec., paras. 1-2.)

28. As Executive Director of BHLM, Mr. Wake is responsible for managing most day to day operations of the firm, including compliance. (Wake Dec., para. 5.)

29. Mr. Wake stays current with the FDCPA and applicable case law, as well as keeping current with developments at the Federal Trade Commission ("FTC"), the Consumer Financial Protection Bureau ("CFPB"), or other agencies which regulate the industry. (Wake Dec., para. 5.)

30. Mr. Wake has been deeply involved as a member of the National Association of Retail Collection Attorneys ("NARCA") (including serving on the NARCA Client Trust Account Task Force and the NARCA Governance Review Task Force) which allows him to interact with hundreds of other attorneys and in-house counsel engaged in debt collection, and to stay abreast of changes in the law and developments in the industry. Through publications, webinars, and regular conferences, NARCA keeps its members informed regarding FDCPA developments and new FDCPA case law. (Wake Dec., para. 5.a.)

31. Mr. Wake has routinely attended NARCA events over the years, most recently the NARCA 2015 Spring Collection Conference in Nashville, TN on May 6-9, 2015, where the agenda includes several sessions on the FDCPA.[3] He has also been a presenter at these events, including most recently as a panelist on the subject of "*The Changing FDCPA: Legislative Reform, the CFPB's Role, Case Law Updates and Trends*" at the NARCA Legal Learning Conference in Chicago on September 16, 2014[4]; "*Meaningful Attorney Review and the Supervision of Non-Attorney*" at the NARCA Legal Learning Conference held in Las Vegas on October 24, 2014[5]; and "*How to Protect your Small Firm by Keeping Your Venders Compliant*" is at the NARCA Legal Learning Conference held in Nashville on May 8, 2015.[6] (Wake Dec., para. 5.a.)

---

[3] https://www.narca.org/?page=Spring15Home
[4] https://www.narca.org/?NL2Chicago2014
[5] http://www.narca.org/?page=Fall14Home
[6] http://www.narca.org/?page=Spring15Home

32. Mr. Wake is a member and Past President of the Illinois Creditors Bar Association ("ILCBA"), a state-wide organization for attorneys practicing in the area of creditors' rights, including consumer debt collection. ILCBA is an accredited CLE provider and provides quality, affordable continuing legal education to its members by hosting several CLE courses each year and by offering legal updates via its monthly eNews, including with respect to the FDCPA. (Wake Dec., para. 5.b.)

33. Mr. Wake regularly participates in ILCBA events and, in fact, is often asked to be a presenter, most recently at the ILCBA Spring Seminar in Chicago on February 16, 2015 where he participated in a panel discussion on the impact of the *Suesz* case.[7] (Wake Dec., para. 5.b.)

34. Mr. Wake regularly reviews various publications and listserves that focus on the FDCPA and new case law. These include InsideARM, ILCBA listserve, NARCA listserve, State Bar and Creditor Bar listserves or daily e-newsletters, and case update services, among others. (Wake Dec., para. 5.c.)

35. In addition, Mr. Wake regularly consults with and receives FDCPA updates from BHLM's two primary outside counsel, David Hartsell at McGuireWoods LLP and David Schultz at Hinshaw Culbertson, both of whom are considered experts in the FDCPA. (Wake Dec., para. 5.c.)

36. Mr. Wake is also in regular communication with the consumer FDCPA bar, so as to better understand their concerns, and has served on numerous FDCPA discussion and CLE panels with prominent consumer attorneys. (Wake Dec., para. 5.d.)

37. When a creditor places an account with BHLM for collection, BHLM checks the consumer's address against the National Change of Address database. (Wake Dec., para. 7.)

---

[7] http://www.ilcba.org/education/

38. In addition, BHLM has developed and built an in-house systematic venue tagging process which utilizes the zip code associated with the account address, and ties it to a specific Illinois county. (*Id.*)

39. Finally, BHLM pulls a credit report to confirm, among other things, that it has the debtor's correct address or whether it needs to be updated. (*Id.*)

40. The initial demand letter is then sent by first class mail, postage prepaid. BHLM monitors all returned or undeliverable mail and, in such a case, will search for a new address using a variety of "skip trace" tools including Accurint reports (a LexisNexis product) and Trans Union's TOL on-line data base. (Wake Dec., para. 8.)

41. Once a new address is located, BHLM re-sends the initial demand letter. BHLM will follow up by calling the debtor and, as part of that conversation, confirm the correct address and make updates as necessary. (Wake Dec., para. 9.)

42. Once the account moves into the suit preparation stage, a BHLM attorney reviews the file to confirm, among other things, the proper venue for the suit. (Wake Dec., para. 10.)

43. In the case of debtors who resided within Cook County, Illinois, and prior to July 3, 2014, BHLM's practice was to confirm the debtor's place of residence (following the procedures set forth above) and then follow the FDCPA's venue requirements as construed and applied by the Seventh Circuit in *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), which held that for purposes of Section 1692i(a)(2), "judicial district" meant the Cook County Circuit Court as established by the Illinois Legislature and not the various municipal subdivisions established by the Circuit Court. (Wake Dec., para. 11.)

44. Thus, BHLM, as well as the other major collection law firms, routinely filed their collection cases at the Daley Center in downtown Chicago, in the First Municipal District, as long as the debtor resided within Cook County. (*Id.*)

45. Many consumers, especially those who rely upon public transportation, find it easier to travel from the outlying areas of Cook County to the downtown Daley Center (via Metra or the CTA), than to travel across the county, which might involve multiple bus transfers and a less direct route to one of the other courthouses. Many of those consumers might already work downtown, making it easier to step away from work for an hour to attend court at the Daley Center, as opposed to taking a day off to attend court in one of the outlying courthouses. (Wake Dec., para. 12.)

46. The Daley Center courthouse has also developed a substantial infrastructure for handling collection cases, including the CARPLS help desk, which does not exist and cannot be replicated, given budgetary constraints, at each of the five other outlying courthouses. (*Id.*)

47. It has always been the case, however, that the debtor could seek a transfer to one of the other municipal districts based on convenience, and BHLM has never opposed such a request. (*Id.*)

48. According to the information provided by PRA at the time it placed this account with BHLM, plaintiff's debt originated as a HSBC Bank Mastercard, which was charged off in 2012 with a balance of $8205.20, and subsequently acquired by Capital One and then PRA. (Wake Dec., para. 16.)

49. Plaintiff's address was listed as 1506 W. Grand Ave., Chicago, IL 60642. (*Id.*)

50. After confirming that address via the procedures described above, BHLM sent an initial demand letter to plaintiff at that address on September 16, 2013. (*Id*.; Oliva Dep., 16:2-17:9 and Dep. Exh. 1.)

51. As part of the suit preparation process, BHLM determined that plaintiff was now residing at 15611 Sunrise Lane, Orland Park, IL 60462. (Wake Dec., para. 17.)

52. This did not change the venue analysis, however, because plaintiff was still residing within Cook County and, therefore, consistent with *Newsom* and the firm's policies and procedures at the time, the lawsuit could be and was filed at the Daley Center, in the First Municipal District, on December 10, 2013. (*Id*.)

53. On July 2, 2014, when a divided *en banc* panel in *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014), overruled *Newsom* and held that "judicial district" meant instead the smallest existing geographical unit within the state court system. (Wake Dec., para. 13.)

54. Mr. Wake first learned of the *Suesz* decision on the morning of July 3, 2014, the day after it was issued, when he received an email from Dan Edelman, the lead plaintiff's counsel in *Suesz*, attaching a copy of the opinion. (Wake Dec., para. 14.)

55. After reviewing the opinion, Mr. Wake immediately directed his attorneys and litigation staff that, effective immediately, any new filings within Cook County would have to comply with *Suesz* and be filed in the applicable municipal district. (*Id*.)

56. Within a matter of days, Mr. Wake also formally revised the venue compliance section of BHLM's "Suit and Litigation Process Operating Procedures" manual to incorporate these new requirements for Cook County filings. (*Id*.)

57. Since that time, BHLM has been engaged with Cook County to navigate the transfer of those cases pending at the Daley Center which, based on the debtor's place of

residence, need to be moved to one of the outlying municipal districts, a process which is still ongoing. (Wake Dec., para. 15.)

Dated:  May 8, 2015                               Respectfully Submitted,

                                                  BLATT, HASENMILLER, LEIBSKER &
                                                  MOORE, LLC


                                                  By:     /s/David L. Hartsell
                                                          One of Its Attorneys

                                                  David L. Hartsell
                                                  Helen D. Arnold
                                                  McGUIREWOODS LLP
                                                  77 W. Wacker Drive, Suite 4100
                                                  Chicago, Illinois  60601-1818
                                                  (312) 849-8100
                                                  (312) 849-3690 (fax)
                                                  dhartsell@mcguirewoods.com
                                                  harnold@mcguirewoods.com

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANT'S LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS** was electronically filed with the Clerk of the Court using the CM/ECF system on May 8, 2015, which constitutes service on below counsel who are registered electronic filing users, pursuant to FED. R. CIV. P. 5(b)(2)(D) and L.R. 5.9:

>Ahmad Tayseer Sulaiman, First
>Sulaiman Law Group, Ltd.
>ahmad.sulaiman@sulaimanlaw.com
>
>Daniel J. McGarry, Esq.
>Sulaiman Law Group, Ltd.
>dmcgarry@sulaimanlaw.com
>
>Mohammed O. Badwan, Esq.
>Sulaiman Law Group, Ltd.
>mbadwan@sulaimanlaw.com

          /s/David L Hartsell

66443347_1