IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD OLIVA,                    )
                                 )
              Plaintiff,         )
                                 )
     v.                          )   No. 14 C 6447
                                 )
BLATT, HASENMILLER,              )
LEIBSKER & MOORE, LLC            )
                                 )
              Defendant.         )


MEMORANDUM OPINION AND ORDER

Ronald Oliva ("Oliva") claims that Defendant violated the

Fair Debt Collection Practices Act's ("FDCPA") venue provision,

15 U.S.C. § 1691i(a)(2), when it filed a credit card collection

suit against him in a judicial district where he neither resided

nor signed the underlying debt contract.

Defendant counters that it was lawful to sue Oliva in the

Cook County Circuit Court's first district because he made

purchases there using his credit card. Alternatively, Defendant

argues that its decision to sue Oliva in the wrong judicial

district resulted from a bona fide error--namely, its reliance

on *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), which the

Seventh Circuit overruled seven months after Defendant filed its

collection suit against Oliva. *See Suesz v. Med-1 Solutions,*

*LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc), *cert. denied*, 135

S. Ct. 756 (2014).

The parties have filed cross motions for summary judgment. For the reasons stated below, I grant Defendant's motion and deny Plaintiff's cross motion.

## I.

The following facts are undisputed. In 2002, Oliva opened an HSBC MasterCard account, which he used to make purchases in the City of Chicago during his time as a student at DePaul University (from which he graduated in 2005) and during his subsequent employment with CDW at its downtown office (where he worked until August 2015). Oliva lived and worked in the City of Chicago almost continuously from 2002 until he moved back home to Orland Park, Illinois in August 2013.

At an unspecified time, Oliva fell behind on his credit card payments. Towards the end of 2012, HSBC charged off Oliva's account, which had a final balance of $8,205.20. Capitol One subsequently bought Oliva's account and later sold it to Portfolio Recovery Associates, LLC ("PRA").

On December 10, 2013, PRA filed a collection suit against Oliva in the Cook County Circuit Court's first judicial district located in the Richard J. Daley Center ("Daley Center") in downtown Chicago. *See Portfolio Recovery Assoc., LLC v. Oliva*, No. 13 M1 168468 (Ill. Cir. Ct.). Oliva lived in Orland Park-- which falls within the Cook County Circuit Court's fifth district--when the collection suit was filed. Oliva retained counsel, but never challenged venue in the collection suit or

personally appeared at the Daley Center for any hearings. Indeed, Oliva admits that the Daley Center was a more convenient forum for him than the Bridgeview courthouse, the closest Cook County Circuit Court to his residence. *See* Dkt. No. 29 at ¶ 12.

Blatt, Hasenmiller, Leibsker & Moore ("BHLM" or "Defendant") represented PRA in the collection suit. In deciding where to file suit, Defendant relied on *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996), which held that the Cook County Circuit Court is a single "judicial district" for purposes of the FDCPA's venue provision even though the court is subdivided into six districts.[1] As long as a debtor lived in Cook County or signed the underlying debt contract there, *Newsom* allowed debt collectors to file suit in any of the Cook County Circuit Court's six districts. Defendant's standard practice after *Newsom* was to file every collection suit against a Cook County resident in the Daley Center even if the debtor, like Oliva, lived in the suburbs.

On July 2, 2014, while Defendant's collection suit against Oliva was pending, the Seventh Circuit overruled *Newsom* and held that "the correct interpretation of 'judicial district or similar legal entity' in § 1692i [the FDCPA's venue provision] is the smallest geographic area that is relevant for determining venue in the court system in which the case is filed." *Suesz v.*

---

[1] *See* http://www.cookcountycourt.org/ABOUTTHECOURT/OrganizationoftheCircuitCourt.aspx (last visited July 14, 2015).

*Med-1 Solutions, LLC*, 757 F.3d 636, 638 (7th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 756 (2014).  The upshot of *Suesz* is that Defendant may now file collection suits against Cook County residents only in the Circuit Court district where the debtor lives or where the debt contract was signed.

On July 10, 2014, only eight days after the Seventh Circuit decided *Suesz*, PRA voluntarily dismissed its collection suit against Oliva and refunded the $186 appearance fee his attorneys had paid.

About one month later, Oliva filed a FDCPA suit alleging that Defendant violated the statute's venue provision when it filed a collection suit against him at the Daley Center rather than at the Cook County courthouse closet to his residence. This is one of twenty-eight retroactive *Suesz* cases that Oliva's attorneys have filed against Defendant since August 2014.  *See* Dkt. No. 25-1 n.1 (collecting cases).

Oliva freely admits that his FDCPA suit is attorney driven. When asked why it mattered to him that the collection suit was filed at the Daley Center rather than at the county courthouse closest to his residence, Oliva testified, "I would say it only matters to me because it matters to my lawyer."  Oliva Dep. at 49.

## II.

The parties have filed cross motions for summary judgment on Oliva's claim and Defendant's bona fide error defense.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A.

The FDCPA's venue provision provides that "unless the debt sued on is secured by real estate, a debt collector can sue to collect it 'only in the judicial district or similar legal entity (A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.'" *Suesz*, 757 F.3d at 639 (quoting 15 U.S.C. § 1692i(a)(2)). "A violation makes the debt collector liable to the debtor for statutory and actual damages, as well as attorney fees." *Id*. (citing 15 U.S.C. § 1692k).

Defendant argues that it did not violate the FDCPA's venue provision because even though Oliva did not live in the City of Chicago when the collection suit was filed, he "signed the contract sued upon" there. 15 U.S.C. § 1692i(a)(2). In support of this argument, Defendant relies on *Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876 (Ill. App. Ct. 2009), which held that "each time [a] credit card is used, a separate contract is formed between the cardholder and bank." *Id*. at 881 (citing

*Garber v. Harris Trust & Savings Bank*, 432 N.E.2d 1309, 1311

(Ill. App. Ct. 1982)).  It follows, according to Defendant, that

Oliva signed separate contracts with HSBC each time he used his

MasterCard in the City of Chicago while attending DePaul

University and working at CDW's downtown office.  Oliva counters

that credit card agreements are considered oral contracts, *id*.

at 884, which are incapable of being "signed" within the meaning

of the FDCPA's venue provision.

The parties have not cited any cases addressing whether

swiping a card credit and signing the receipt constitutes

"signing" a debt contract for purposes of the FDCPA's venue

provision.  15 U.S.C. § 1692i(a)(2).  I decline to take a

position on that issue because Oliva's claim fails for an

independent reason explained below.

B.

Defendant's main argument for summary judgment is that its

reliance on *Newsom*--and its failure to predict *Suesz*--was a bona

fide error that does not give rise to liability under the FDCPA.

The FDCPA provides a statutory defense for bona fide

errors:

> A debt collector may not be held liable in any action
> brought under this subchapter if the debt collector
> shows by a preponderance of evidence that the
> violation was not intentional and resulted from a bona
> fide error notwithstanding the maintenance of
> procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).

Consistent with the statutory language quoted above, "[a] defendant is entitled to invoke the FDCPA's bona fide error defense only if it can show that the violation: (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 803 (7th Cir. 2009) (citing *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)).

Only the second element of the defense--i.e., whether Defendant's reliance on *Newsom* and failure to predict *Suesz* was a bona fide error--is disputed in the parties' cross motions for summary judgment. Oliva relies heavily on *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), a case in which a debt collector sent a notice advising the consumer that the underlying debt would be presumed valid unless disputed in writing. At the time the debt collector sent this letter, courts were split on whether an "in writing" requirement violates the FDCPA. *Compare Graziano v. Harrison*, 950 F.2d 107, 112 (3d Cir. 1991) (in writing requirement does not violate FDCPA), *with Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005) (opposite).

The Supreme Court assumed (without deciding) that the debt collector's letter violated the FDCPA and addressed whether the bona fide error defense applies to violations resulting from

mistaken interpretations of the FDCPA's prohibitions. The Court said no, meaning that the debt collector in *Jerman* could not escape liability even though it had relied on a non-controlling case, *Graziano*, holding that debt collectors may impose an "in writing" requirement.

Oliva's case is nothing like *Jerman*. *Newsom* was controlling authority that squarely permitted Defendant to file a collection suit against Oliva in any of the Cook County Circuit Court's six districts. It would be strange to say that Defendant violated the FDCPA by doing something that *Newsom* expressly permitted. *Jerman*'s holding that the bona fide error defense does not apply to mistaken interpretations of law is inapposite because Defendant did not make a legal error when it relied on the Seventh Circuit's controlling interpretation of the FDCPA's venue provision. *See Kort*, 394 F.3d at 538 n.9 (no mistake of law where debt collector relied on implementing agency's interpretation of statute and "did not exercise any 'legal judgment' of its own").

Oliva counters that *Suesz* changed the rules--such that Defendant could not sue him at the Daley Center today--and made its holding retroactive. Only the first half of Oliva's argument is correct. Going forward, Defendant acknowledges that it will have to file collection suits in the specific Cook County Circuit Court district where the debtor resides or signed the underlying contract. *See* Dkt. No. 24-1 at ¶ 13.

As for retroactivity, Oliva misreads *Suesz*'s limited holding on that subject.  After the Seventh Circuit agreed to hear *Suesz* en banc, the debt collector asked the court to apply any new interpretation of the FDCPA's venue provision on a prospective basis only.  The Seventh Circuit rejected this plea, but stopped short of holding that any debt collector who filed suit in a venue that was lawful under *Newsom*--but unlawful under the new rule announced in *Suesz*--would be subject to FDCPA liability.  *Suesz*, 757 F.3d at 649-50.  The FDCPA provides a defense for debt collectors who rely on an advisory opinion by the Consumer Financial Protection Bureau ("CFPB") even if "such opinion is [later] amended, rescinded, or determined by judicial or other authority to be invalid for any reason."  15 U.S.C. § 1692k(e).  If CFPB advisory opinions provide a safe harbor for debt collectors, so too does *Newsom*, a controlling decision that permitted Defendant to sue Oliva at the Daley Center rather than at the county courthouse closest to his home.

Oliva also overlooks the fact that Defendant's reliance interest in *Newsom* is even stronger than the reliance argument that the Seventh Circuit rejected in *Suesz*.  The debt collector in *Suesz* relied on *Newsom* for the proposition that the Marion County Small Claims Court was one "judicial district" for purposes of the FDCPA's venue provision even though it was divided into nine townships.  *Newsom*, however, was a case about the Circuit Court of Cook County, not the Marion County court

system.  What the debt collector in *Suesz* characterized as a
reliance argument was actually an attempt to extend *Newsom*'s
holding to a different county court system.  In contrast,
Defendant squarely relied on *Newsom*'s holding that the Circuit
Court of Cook County was one judicial district when it filed a
collection suit against Oliva at the Daley Center rather than at
the county courthouse closest to his home.  If the Seventh
Circuit had overruled *Newsom* in a case involving a Cook County
collection suit, the court may well have applied its ruling only
on a prospective basis.  *See Suesz* 757 F.3d at 650 (prospective
overruling permissible where "the law has been so well settled
before the overruling that it had been unquestionably prudent
for the community to rely on the previous legal understanding").

In sum, Defendant's reliance on *Newsom* was not a legal
error that would preclude application of the FDCPA's bona fide
error defense.  *See Jerman*, 559 U.S. at 577.  At the time
Defendant sued Oliva at the Daley Center rather than at the Cook
County courthouse closest to his home, its actions were lawful.
*See Newsom*, 76 F.3d at 819.  Nothing in *Suesz* suggests that the
Seventh Circuit intended to (1) make its holding retroactive to
debt collectors, like Defendant, who relied on *Newsom* when
deciding where to sue Cook County residents and (2) unleash a
torrent of FDCPA suits in which those same debt collectors would
be held liable for doing something that *Newsom* expressly
permitted.  The retroactivity holding in *Suesz* was limited to

rejecting a Marion County debt collector's asserted reliance interest in *Newsom* and following the standard judicial practice of applying a new rule in the same case in which it is announced.  *See Suesz*, 757 F.3d at 649 (noting that "adopting a new rule while refusing to apply it to the parties before us would raise serious constitutional concerns").

### III.

Defendant's motion for summary judgment is GRANTED and Oliva's cross motion is DENIED for the reasons stated above.


**ENTER ORDER:**


_____
                    **Elaine E. Bucklo**
            United States District Judge


Dated: July 14, 2015